**Szilagyi v. Raicu**

*Byron Yatron,* for plaintiff.
*Kurt B. Geishauser,* for defendant.

KELLER, *J.,* May 18, 2005—Beatrice Andrea Szilagyi, born March 4, 1998, daughter of the plaintiff, Samuel Szilagyi and defendant Tabitha Raicu, is the subject of the custody relocation order at issue. The parties to the action moved to this country from Romania several years ago. They were divorced July 2000, after which the plaintiff moved to Georgia to live with his brother and his family. The plaintiff lived in Georgia from August 2000 through November 2001. While the plaintiff lived in Georgia, Beatrice visited several times, for approximately two weeks at a time. The remainder of the time, the child lived with the defendant, Tabitha Raicu, in Berks County.

In June 2002, the plaintiff filed for partial physical custody of the minor child, and, by stipulated order of June 7, 2002, was granted partial physical custody. The plaintiff had custody of the minor child every other weekend—Friday from 4:30 p.m. to Sunday night at 7 p.m. After this order was entered, however, the defendant failed to allow the plaintiff to take part in the scheduled visitations on numerous occasions due to allegations being investigated by Berks County Children and Youth Services, arising in January 2002, that the plaintiff sexually abused the minor child.

The defendant filed a petition to modify custody on August 15, 2003, due to allegations of child abuse. On October 31, 2003, as a result of a status conference on the petition to modify, the custody order was modified. Due to the many issues surrounding this case, the order ultimately allowed the plaintiff more visitations, with Father not only having the child every other weekend, but also Tuesdays and Thursdays after school until 7 p.m. The order also included a provision that neither parent

should file reports with Children and Youth Services accusing the other parent of misconduct.

On February 12, 2004, the minor child's pediatrician reported another possible incident of child abuse to Berks County Children and Youth Services. On February 18, 2004, as a result of this allegation, as well as the many previous allegations beginning in January 2002, a dependency hearing took place. At that point, the parties agreed to have the child put in placement. The child remained in placement until the investigation was completed in July 2004. During the investigation all parties were interviewed and evaluated by Dr. Valliere. See N.T. relocation hearing, 1/14/05, 2/11/05, exhibit P4, pp. 54-62 (Beatrice Szilagyi), 63-69 (Samuel Szilagyi), 90-98 (Tabitha Raicu). During the child's sessions, as well as to her foster parents, she recanted her allegations of abuse and said she felt uncomfortable lying. N.T. exhibit P4, pp. 57-58. As a result of the evaluations, it was determined that the defendant was unable to see the child unsupervised because she was believed to be coaching her daughter to bring allegations of abuse against her father. See N.T. exhibit P4, pp.70-71, 123-24.

As the allegations against the plaintiff were found to be unfounded, and after trial visits with the father went well, on November 5, 2004, an order was entered transferring physical custody back to the father and, on November 10, 2004, an order was entered transferring legal custody to the father. See N.T. exhibit P2, pp. 1-2; exhibit P3, pp. 1-4. At that point, the defendant was permitted only supervised visitation, to increase or decrease as recommended by Dr. Veronique Valliere, one time every other week. It was also required that the defendant

could only speak English during the visits, as a result of the belief that the defendant was coaching the child. Children and Youth Services continued to be involved in the case to supervise the family. See N.T. exhibit P3, pp. 2-3.

On December 16, 2004, the plaintiff, unable to find suitable employment in Berks County, filed a relocation petition, requesting that he be permitted to take his daughter to Georgia to live with his family. This court set the hearing date for January 14, 2005. However, prior to the hearing, on December 29, 2004, the plaintiff moved back to Georgia with his family, and took Beatrice with him.

On January 14, 2005, and February 11, 2005, this court heard testimony regarding the plaintiff's petition for relocation. On March 14, 2005, this court granted the plaintiff's petition for relocation, finding that it was in the best interests of the minor child, Beatrice Andrea Szilagyi, to remain living with the plaintiff in Georgia. This court granted the defendant supervised visits two times per year for at least one hour at a time.

On April 13, 2005, the defendant filed a notice of appeal to this court's order of March 14, 2005. On April 22, 2005, this court ordered the defendant to file a concise statement of matters complained of on appeal within 14 days. The defendant filed her concise statement raising one issue on appeal:

"(1) Whether the trial court erred in approving appellee's relocation to Georgia with the minor child." (Defendant's concise statement of matters complained of on appeal, 5/9/05.)

The factors to be considered in determining whether the petitioner's relocation petition should be granted are

the factors delineated in *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990). "First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children, and is not the result of a momentary whim on the part of the custodial parent." *Id.* at 184, 583 A.2d at 439. Next, the court must determine the motives for both parties, in wanting the relocation or challenging the relocation. It must be determined whether the motive is to keep the child from the non-custodial parent, and whether the custodial parent will cooperate with alternate visitation arrangements once the move occurs. *Id.* at 185, 583 A.2d at 439. Lastly, "the court must consider the availability of the realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent." *Id.* The necessity for an alternate visitation arrangement is not going to defeat a move that will benefit the custodial parent and the child. *Id.* The burden of showing that the move is going to significantly improve the quality of life for the parent and child is primarily upon the custodial parent requesting the relocation. However, both parties have the burden of showing that their motives are pure, either in desiring the move or trying to prevent it. *Id.* at 186, 583 A.2d at 440.

In the case at hand, this court reviewed the above standard and carefully applied the facts of this case to the standard. Further, this court carefully reviewed all evaluations done by Dr. Valliere and her staff, and the recommendations resulting from the evaluations. First, this court reviewed the potential advantages of the proposed

move for the custodial parent, here the father, and the minor child. This is a unique case in that this petition for relocation follows years of litigation in both custody court and juvenile court, arising from numerous allegations of sexual abuse by Father. Additionally, the parties came here from Romania and, because of the allegations of sexual abuse against the father, he was ostracized from the small Romanian community here in Berks County. N.T. at 14-16. Father was not welcome at any events in the community, which in turn hurt the minor child by not being able to participate. Additionally, the plaintiff attempted to find a job in Berks County, but after many attempts to find employment, he was unable to find a position. N.T. at 24-27. The defendant has a full-time job in Georgia, where he works first shift, allowing him to spend time with the child after she is done with school. The plaintiff further plans to work with his brother, in the near future, at his construction company. N.T. at 12-13. The home the child will be living in with the plaintiff and his family appears to be well suited for the child, and the child appears to be adjusting well. See N.T. exhibits P1 (a)-(q).[1] Importantly, Father has taken the child to a place where, first, they are free from the stigma from the sexual abuse allegations, second, the child will have some much needed stability, and third, where there are several members of his family that the child is familiar with from visits previously when defendant lived in Georgia in 2000-2001.

---

1. The plaintiff and the child currently live in a home with the plaintiff's brother and in-laws, which is not pictured. The exhibits relate to the home they will be living in after the end of the school year, also with the plaintiff's brother and in-laws.

This court next carefully reviewed the motives of the parties. Again, due to the extensive background of this case, and the parties' apparent continuously conflicting relationship, the determination of the true motives behind the parties' actions were complicated to determine. Clearly, Father's motive to move to Georgia is to make a better life for himself and his daughter. He has family there, a suitable house to live in and a strong Romanian Community to be a part of. This was not a decision the plaintiff made on a whim. In fact, it was discussed prior to the filing of the petition for relocation that he planned to move to Georgia because of the lies told about him and because his life was turned upside down. N.T. at 50, 60-61 This court acknowledges that the plaintiff did not wait for this court's decision on the relocation petition before moving and that he took steps, when he arrived in Georgia, to contact the Children and Youth Services office there to transfer the case from Berks County to Georgia. Both of these actions seem to demonstrate that he was going to stay in Georgia no matter what this court determined. However, the plaintiff's behavior is far less disturbing than the defendant's behavior. The defendant clearly wants to get her daughter back, keep her daughter from the plaintiff, and has stated in her evaluations that she was afraid that Father wanted more time with their daughter. As stated above, part of the plaintiff's motivation for the move may be to keep his daughter's contact limited with the defendant. However, the court agrees with the plaintiff, as her contact is strictly limited by court order. The defendant's actions in coaching the child to make false allegations of sexual abuse against her father clearly are terrible and, frankly, the defendant

has put herself in this position by treating her child as a pawn in a game between herself and the plaintiff. As stated previously, the defendant's visitation is very limited at this point by court order, and, therefore, in consideration of the parties' actions thus far, this court believes the plaintiff was trying to give his daughter stability by moving to a place where she can begin to heal and actually enjoy her childhood.

Finally, this court reviewed alternate visitation schedules. Clearly the distance here is a factor; however, when the petition for relocation was filed, as stated above, the defendant had only bi-weekly supervised one-hour visitations with the child. This currently meant that mother had 26 hours of visitation a year. The plaintiff agreed that he would provide for transportation for visitations, and agreed to possibly once a month for two or three hours at a time to give mother the same amount of time had the child been in Berks County. By court order, the mother must continue counseling and, until Dr. Valliere finds that more visitations are warranted, the limited supervised visitation will continue. The defendant argues that she will be unable to gradually be reintroduced into her child's life if the plaintiff is permitted to keep the child in Georgia She argues that there is no way that a substitute visitation arrangement can be created that will allow for gradual reintroduction. See N.T. at 70. However, again, this is not a normal case where the parties share custody, and the defendant is going from a considerable amount of visitation to limited visitation. The defendant now only has one-hour visits every other week. Certainly, if the plaintiff is willing to have the child come to Berks County once a month, that will be a sufficient

arrangement, and may end up, depending on the length of the visits, giving the defendant more visitation time with the child. As Dr. Valliere and her staff see increased visitation as fit, the plaintiff will not need to plan more visits, but just change the length of the visits. This will allow the gradual reintroduction of the child into the defendant's life, as well as provide a stable and loving environment for the child at this time. As a result, this court finds the alternate visitation schedule is fair to all parties involved.

Therefore, after carefully reviewing all of the *Gruber* factors above, and after careful consideration of the facts of this case, this court finds that granting the plaintiff's petition for relocation to Georgia was in the best interests of both the plaintiff and the minor child.

For all of the foregoing reasons, this court respectfully requests that this court's order granting the plaintiff's petition for relocation be affirmed, and the defendant's appeal be denied.